## IN THE SUPERIOR COURT OF GUAM
BY:_____

| | |
|---|---|
| PEOPLE OF GUAM,<br><br>vs.<br><br>FRANK JAMES SAN NICOLAS,<br>DOB: 06/21/1970<br><br><br><br>Defendant. | CRIMINAL CASE NO. CF0564-20<br><br><br>**DECISION AND ORDER**<br>*Defendant's Motion in Limine*<br>*for Mistrial* |

This matter came before the Honorable Arthur R. Barcinas on June 30, 2022, for a hearing on Defendant's Motion in Limine for Mistrial. Present at the hearing were: Defendant Frank San Nicolas ("Defendant") with Counsel Joaquin Arriola Jr., and Assistant Attorney General Richelle Y. Canto for the People. Having considered the briefs, arguments, transcripts, and the applicable law, the Court hereby **DENIES** Defendant's Motion in Limine for Mistrial.

## BACKGROUND

This case arises from an Indictment returned by the grand jury on October 29, 2020, charging Defendant with the following: THIRD DEGREE CRIMINAL SEXUAL CONDUCT (As a Second Degree Felony), and FOURTH DEGREE CRIMINAL SEXUAL CONDUCT (As a Misdemeanor) 2 counts.

Jury Selection commenced on June 22, 2022, and a petite jury was sworn in on June 23, 2022. That same day, Defendant filed a Motion in Limine to Exclude Hearsay Statements and 403 Exclusion, wherein he sought to exclude the following People's witnesses: Juanita Blas, Francesca De Oro, Matthew Sablan, Katie McManus, Collette Palomo, and Jess Rojas. Def's Mot. in Lim. to Excl. Hearsay p. 1 (Jun. 23, 2022). The People filed their Opposition on June 24, 2022, and a hearing on the motion was held that morning. After considering the arguments, briefs, and the applicable law, the Court issued its Decision and Order granting Defendant's Motion in Limine to Exclude Hearsay Statements and 403 Exclusion ("June 27, 2022, Decision and Order"), which effectively excluded the six witnesses named above from testifying at trial. *See* Decision & Order (Jun. 27, 2022).

On June 27, 2022, the People asked the Court to reconsider its June 27. 2022, Decision and Order. Min. Entry 2:13:04 - 2:13:30PM (Jun. 27, 2022). Trial continued and the People called their first witness, Police Officer Kyle Hendrickson ("Officer Hendrickson"). Officer Hendrickson testified that Victim was accompanied by her friend, "Mr. Sablan," when she made the report at the Tumon Prescient.

Defense: "Was [Victim] with anyone?"

Officer Hendrickson: "She was sitting with her friend."

Defense: "Who is her friend?"

Officer "His name is Mr. Sablan."

Min. Entry 3:10:42 – 3:10:50PM (Jun. 27, 2022).

On June 28, 2022, the People called their second witness, Police Officer Jelene Desamito ("Officer Desamito"). Officer Desamito testified that Victim's "roommate" was present when they conducted the scene check at Tanguisson.

Prosecutor: "During that scene check, who went with you?"

Officer Desamito: "With me were Detective Raval, Detective Gogo, two crime scene investigators Officer Tenorio, Officer Ponce, and I believe it was two victims, and a male."

Min. Entry 9:49:40 – 9:49:57AM (Jun. 28, 2022).

Prosecutor: "What is the relationship of the male to [Victim]?"

Officer Desamito: "[Victim] had indicated that he was her roommate."

Min. Entry 9:53:52 – 9:53:56AM (Jun. 28, 2022). Later that day, the People called their third witness, Hila'an San Nicolas ("Hila'an"). Hila'an testified that he apologized to Victim for his father's (Defendant) actions at a meeting at Collette Palomo's house after Victim revealed that she was sexually assaulted.

Prosecutor: "After that day, do you recall apologizing to [Victim] for your Dad's [Defendant] actions that day?"

Hila'an: "I did."

Prosecutor: "And why did you do that?"

Defense: "Objection; relevance."

Court: "The Objection is relevance."

Prosecutor: "Directly relevant to the issue at trial, Your Honor."

Defense: "Um… Your Honor… seed of relevance on that basis."

Court: "I'm going to allow the question and see where it goes. You can answer the question."

Prosecutor: "Thank you. Hila'an … so…"

Hila'an: "I'm sorry, can you repeat the question."

Prosecutor: "So earlier you testified that you remember apologizing to [Victim] for your Dad's [Defendant] actions towards her that day. Why did you apologize?"

Hila'an: "Well I didn't want to seem apathetic or be apathetic to her and I… I was remorseful that anything could happen… umm… You know, I was shocked upon hearing about it at first and… and… and… uhh… totally caught off guard… umm… confused and … ahhh… at that point she [Victim] and I were still very cordial, so I wanted to maintain a good umm civil status with her."

Prosecutor: "You mentioned that you were shocked, was there anything about her demeanor that made you think about the veracity of her complaint?"

Defense: "Objection; relevance, lack of foundation."

Court: "Overruled."

Prosecutor: "You can answer."

Hila'an: "Uhh… no it wasn't her demeanor… just… just… that information being conveyed uhh to anyone in any circumstance is shocking, has a potential to, you know, come off as quite a surprise."

Prosecutor: "Do you know if that happened before the police were involved, or after the police were involved?"

Hila'an: "If what happened?"

Prosecutor: "If you apologizing to her happened before the police were involved, or after?"

Hila'an: "I'm not sure."

Prosecutor: "Okay. Do you recall umm how close in time that was from the time that it happened to the time that you heard about it and apologized?"

Hila'an: "I believe it was the next day."

Prosecutor: "Okay…. I have no further questions."

Court: "Thank you. Mr. Arriola."

Min. Entry 1:22:30 – 1:25:30PM (Jun. 28, 2022). Defense counsel proceeded to cross-examine Hila'an.

> Defense: "Now…you just indicated that maybe the day after this incident, you gave her an apology, correct?"

> Hila'an: "Yes."

> Defense: "And that is because she came... she approached you and several other people and made her claim … [inaudible stutter] Excuse me. *She made her allegations in front of all these people about being sexually assaulted, correct?*"

> Hila'an: "Correct."

> Defense: "And you were there, and your girlfriend was there?"

> Hila'an: "Yes."

> Defense: "And your girlfriend is Francesca De Oro, correct?"

> Hila'an: "Correct."

> Defense: "Your girlfriend Francesca De Oro, is the sister of Muneka De Oro, correct?"

> Hila'an: "Yes."

Min. Entry 1:27:45 – 1:28:26PM (Jun. 28, 2022). Cross examination continued.

> Defense: "Hila'an when you apologized, the time you apologized to [Victim] you thought it was the next day, maybe May 17, 2020?"

> Hila'an: "Yes."

> Defense: "Okay. What time of day?"

> Hila'an: "Evening…uhh"

> Defense: "Where?"

> Hila'an: "After 9pm."

> Defense: "Where at?"

> Hila'an: "In Dededo, the residence of Collette Palomo."

Defense: "And who was at this residence?"

Hila'an: "Umm. Colette Palomo, [Victim], myself, Francesca De Oro...."

...

Hila'an: "Veronica Dydasco."

Defense: "Veronica Dydasco."

Hila'an: "And Laylynn Eclavea."

Defense: "Laylynn Eclavea. Seven... six people. Now, did you all meet there for a certain occasion or were you there... when you were there was [Victim] already there?"

Hila'an: "Yes."

Defense: "When you arrived, who did you arrive with?"

Hila'an: "Umm. Palomo."

Defense: "When you were there were all these other people there?"

Hila'an: "Yes."

Defense: "Including Francesca, your girlfriend?"

Hila'an: "Yes."

Min. Entry 1:29:56 - 1:31:00PM (Jun. 28, 2022). Later that afternoon the People called their fourth witness, Trevor Boykin ("Boykin"). Boykin testified that Matthew Sablan was Victim's roommate.

Prosecutor: "When COVID happened in Guam, what became your living situation?"

Boykin: "I was staying with [Victim] for majority of the time."

Prosecutor: "Who else was staying with [Victim]?"

Boykin: "Two roommates: Jess and Matt."

Prosecutor: "Do you recall Matt's last name?"

Boykin: "Matthew Sablan."

Min Entry 2:27:42 – 2:28:07PM (Jun. 28, 2022).

After Boykin testified, the Court excused the jury to address legal matters with the parties. The People then renewed their motion for the Court to reconsider its June 27, 2022, Decision and Order that effectively excluded Matthew Sablan from testifying. The People argued that there were multiple instances throughout the trial where Matthew Sablan's name was mentioned, including him being present when the report was made, him being the roommate, and possibly a person who saw Victim when she returned home from the alleged incident and would have descriptions of Victim's demeanor. The People further argued that these reasons are all not hearsay, and that the People should be allowed to call Matthew Sablan as a witness. Defendant argued that allowing Matthew Sablan to testify would be cumulative, irrelevant, and still hearsay. *See* Min. Entry 3:01:00 – 3:03:13PM (Jun. 28, 2022). After considering the arguments, the Court found that "*it is a fair request to give an explanation to the jury about who accompanied Victim to the police station*," and that unlike the other witnesses named in the Court's June 27, 2022, Decision and Order, Matthew Sablan played a unique and significant role in accompanying Victim to make the report. However, the Court reiterated that the request does "*not change the Court's analysis that [Matthew Sablan] should not be allowed to testify as to any hearsay statement made by the Victim.*" As such, the Court granted the People's request to reconsider its decision, and allowed the People to call Matthew Sablan as a witness for the limited purpose developed during the trial that day. The Court also reminded the People not to cross the hearsay threshold that the Court previously ruled on in its June 27, 2022, Decision and Order. *See* Min. Entry 3:03:30 – 3:04:07PM (Jun. 28, 2022).

On June 29, 2022, the People called their fifth witness, Matthew Sablan ("Sablan").

Prosecutor: "Were you able to observe [Victim] on the day of, or shortly after when she was sexually assaulted by Ko?"

Defense: "Objection"

Prosecutor: "What is…"

Court: "The objection."

Defense: "Assumes facts not in evidence."

Prosecutor: "The facts are already in evidence, Your Honor."

Court: "The objection is overruled."

Min. Entry 9:48:40 – 9: 49:06AM (Jun. 29, 2022). The direct examination of Sablan continued.

Prosecutor: "Were you able to observe [Victim] on the day of or shortly after she was sexually assaulted by Ko?"

Sablan: "Yes, I was."

Prosecutor: "Can you tell us what your observation was?"

Sablan: "She seemed out of sorts. She wanted to confide in me … and some information, and she seemed nervous (sigh)…just… somewhat unsure, but scared, but at the same time sure, sure something happened that she did not want to happen."

Defense: "Objection; narrative, calls for hearsay."

Court: "Sustained on the hearsay."

….

Prosecutor: "What is [Victim's] regular personality like?"

Sablan: "She was more upbeat, caring, and more open and sharing. She was sociable. I mean she wasn't like super open, but she was friendly, cordial, she has a somewhat upbeat demeanor about her, and she just wants to live her life. Yeah. Usually, she's caring and nurturing from my standpoint."

Prosecutor: "And on that day that you met her, was she still caring, nurturing, and upbeat?"

Sablan: "Yes, but I could tell that something was bothering her heavily, something that was definitely out of sorts for her. I don't know."

… [adjusts microphone]

Prosecutor: "You observed something was weighing heavily on her, what else did you observe?"

Sablan: "She was scared (sigh)"

Prosecutor: "What was she scared about?"

Defense: "Objection; calls for hearsay."

Court: "Counsel."

Prosecutor: "I'll ask a different question."

Court: "Thank you."

Prosecutor: "Sir, did you accompany [Victim] to file a police report because of what happened to her?"

Sablan: "Yes, I did."

Prosecutor: "Do you recall what day that was?"

Sablan: "It was the same day."

Prosecutor: "Was it the same day that you spoke with her?"

Sablan: "Well, it was later in the night because she was (sigh) scared, kind of on the fence about speaking up about her incident but with some encouragement, you know, I pushed her to file because it was very important, people need to know about it, and it was not something that, you know, could just slide."

Prosecutor: "So, are you aware that you made a police report on the 18th of May, at about three in the morning?"

Sablan: "(sigh) Yes, that was more accurate that time because I know she was scared and deliberating about the whole situation."

Min. Entry 9:49:07 – 9:52:45AM (Jun. 29, 2022). Direct examination of Sablan continued.

Prosecutor: "Who else did [Victim] reveal this to?"

Sablan: "To my knowledge, some mutual friends of ours."

Prosecutor: "Who are these mutual friends?"

Sablan: "Collette, Ronny, and Leelynn... "

Defense: "Objection; lack of personal knowledge, calls for hearsay."

Prosecutor: "I'll develop it, Your Honor."

Court: "Kay."

Prosecutor: "Mr. Sablan, were you there when [Victim] revealed..." (Defense: Objection; this is what she did) [Prosecutor continues] "that she had been sexually assaulted.?"

Defendant: "Objection... same objection, Your Honor."

Court: "I understand. It is a continuing objection especially as to facts not in evidence. The Court has made the ruling. You may continue counsel."

Prosecutor: *"Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?"*

Sablan: "Yes, I was."

Prosecutor: *"Where did this occur?"*

Sablan: "This was at Collette's house."

Prosecutor: "Collette's house?"

Sablan: "Mhm."

Prosecutor: *"Who else was at Collette Palomo's house?"*

Defense: "Your Honor, may I approach."

Court: "You may."

Defense: "I'd like to renew the objection. This is exactly..."

[sidebar]

Min. Entry 9:53:04 – 9:54:06AM (Jun. 29, 2022).

During the sidebar, Defense indicated that he was about to move for a mistrial, requested a recess, and asked the Court to replay the question. The People argued that a prior witness had already testified that Sablan was present when Victim revealed that she was sexually assaulted, and that the questions posed are regarding the place and the people present at the meeting

indicated in the testimony. *See* Min. Entry 9:54:15 – 9:54:47AM (Jun. 29, 2022). The Court then excused the jury. Defense requested that the Court play back the last three questions to witness. Defense argued that the People's question *"Were you there when [Victim] revealed that she was sexually assaulted..."* is the exact hearsay statement that this Court specifically ruled on and made a motion for mistrial. The People argued that a mistrial is not necessary, that Hila'an has already testified that there was a meeting at Collette Palomo's house where Victim revealed that she was sexually assaulted and Hila'an apologized for Defendant's action, and the question was meant to elicit non-hearsay observations of Victim's demeanor. Min. Entry 9:55:51 – 9:57:22AM (Jun. 29, 2022). The Court then took a brief recess to consider the parties arguments and the applicable law.

After the recess, the Court did a playback of the relevant portion of the transcript for the parties. Then after considering the arguments, and the applicable law, the Court denied Defendant's oral Motion for Mistrial from the bench. Defense requested a recess to brief the matter and to return the next day for argument. The Court offered the parties a curative instruction. Defense argued that the proper type of instruction would be that the Prosecutor's last three questions to Sablan and the answers therein be stricken. The Prosecutor conceded. As such, the colloque indicated below was stricken from the record:

> Prosecutor: *"Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?"*
>
> Sablan: "Yes, I was."
>
> Prosecutor: *"Where did this occur?"*
>
> Sablan: "This was at Collette's house."
>
> Prosecutor: "Collette's house?"
>
> Sablan: "Mhm."

Prosecutor: "*Who else was at Collette Palomo's house?*"

Sablan: [no answer]

Min. Entry 9:53:45 – 9:54:00AM (Jun. 29, 2022). The Court brought Sablan back into the witness stand and instructed Sablan not to talk about anything [Victim] may have said to him. *See* Min. Entry 10:37:27AM (Jun. 29, 2022). The Court then called the jury back and instructed them that the last three questions from the Prosecutor to Sablan and Sablan's answers to those questions are stricken, and such information is not allowed to enter deliberation. *See* Min. Entry 10:39:35AM (Jun. 29, 2022). Trial resumed with Sablan's testimony, and he was later excused. The People later called their sixth witness, Victim.

Trial continued later that afternoon. Before the jury was brought into the courtroom, Defense informed the Court of a written Motion for Mistrial on the grounds of prosecutorial misconduct. In response, the People opposed any continuance and indicated that the line of questioning that is Defense's point of contention, has already been stricken. With consideration to the bold and serious accusation of prosecutorial misconduct, the Court gave the People time to file an Opposition and any supplemental briefing to be due the next day at 8 a.m.

The People filed their Opposition, and Defendant filed his Supplemental Brief on the morning of June 30, 2022. A hearing on the Motion was held at 10 a.m., where the parties made their oral arguments. The People indicated that they did not have time to review Defense's Supplemental Brief. As such, the Court allowed the People time to file a Supplemental Brief in support of their Opposition for the Court to consider. The People filed their Supplemental Brief later that afternoon.

## DISCUSSION

## I. MOTION FOR RECONSIDERATION

The People argue that Defendant's written Motion fails to satisfy the test for reconsideration as required by the Guam Local Rules CR 1.1:

> A motion may be renewed only on the grounds of (1) a material difference in fact or law from that presented to the court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (2) the emergence of new material facts or change of law occurring after the time of such decision, or (3) a manifest showing of a failure to consider material facts presented to the court before such decision.

Local Rule CR 1.1. The Court acknowledged the People's argument on the record during oral argument. The Court explained that while Defendant's written Motion takes the form of a motion for reconsideration, the Court considered Defendant's Motion and allowed the People to filed an Opposition in an abundance of caution and with consideration to the extreme allegation of prosecutorial misconduct.

## II. MISTRIAL IS NOT WARRANTED

The trial court has discretion "to decide whether a given incident merits a mistrial. *People v. Aguon*, 2020 Guam 24 ¶ 22; quoting *United States v. Nace*, 561 F.2d 763, 768 (9th Cir. 1977). "A mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial impact of the error." *Id.*; quoting *United States v. Gann*, 732 F.2d 714, 725 (9th Cir. 1984). Granting a mistrial is an extraordinary measure reserved for "plain and obvious causes." *Id.* at ¶ 27; *see Gann*, 732 F.2d at 725.

### a. Prosecutorial Misconduct

The Guam Supreme Court holds that "in order for a prosecutorial misconduct claim to succeed, the [defendant] must be able to show that the 'prosecutor's comments so infected the trial with unfairness as to make the [possible] resulting conviction a denial of due process.'"

*People v. Joshua*, 2015 Guam 32 ¶ 25; quoting *People v. Evaristo*, 1999 Guam 22 ¶ 20. To warrant reversal, it must be demonstrated that it is "more probable than not that the misconduct affected the jury's verdict." *Id.*; *see Evaristo*, 1999 Guam 22 ¶ 18. Further, "a trial judge may cure the effect of improper prosecutorial misconduct by giving appropriate curative instructions to the jury." *Id.* Defendant makes several arguments in support of his claim of prosecutorial misconduct. The Court addresses each in turn.

### i. Prosecutor's line of questions related to the meeting at Collette Palomo's house does not warrant a mistrial.

Defendant first argues that the Prosecutor's question to Sablan explicitly stated: "*victim revealed to the witness that the Defendant sexually assaulted her,*" assumes facts not on the record. Def's Mot. in Lim. Mistrial p. 2 (June. 29, 2022) (emphasis added). The relevant transcript of Sablan's testimony is as follows:

Prosecutor: "Who else did [Victim] reveal this to?"

Sablan: "To my knowledge, some mutual friends of ours."

Prosecutor: "Who are these mutual friends?"

Sablan: "Collette, Ronny, and Leelynn... "

Defense: "Objection; lack of personal knowledge, calls for hearsay."

Prosecutor: "I'll develop it, Your Honor."

Court: "Kay."

Prosecutor: "Mr. Sablan, were you there when [Victim] revealed..." (Defense: Objection; this is what she did) [Prosecutor continues] "that she had been sexually assaulted.?"

Defendant: "Objection... same objection, Your Honor."

Court: "I understand. It is a continuing objection especially as to facts not in evidence. The Court has made the ruling. You may continue counsel."

Prosecutor *"Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?"*

Sablan: "Yes, I was."

Prosecutor: *"Where did this occur?"*

Sablan: "This was at Collette's house."

Prosecutor: "Collette's house?"

Sablan: "Mhm."

Prosecutor: *"Who else was at Collette's Palomo's house?"*

Sablan: [no answer]

Min. Entry 9:53:04 – 9:54:06AM (Jun. 29, 2022). The People argue that Defense laid the foundation for the question regarding the meeting at Collette Palomo's house in his cross-examination of Hila'an. People's Opp'n pp. 4-5 (Jun. 30, 2022). Hila'an's testimony that the People reference is indicated below:

Defense: "Hila'an when you apologized, the time you apologized to [Victim] you thought it was the next day, maybe May 17, 2020?"

Hila'an: "Yes."

Defense: "Okay. What time of day?"

Hila'an: "Evening...uhh"

Defense: "Where?"

Hila'an: "After 9pm."

Defense: "Where at?"

Hila'an: "In Dededo, the residence of Collette Palomo."

Defense: "And who was at this residence?"

Hila'an: "Umm. Colette Palomo, [Victim], myself, Francesca De Oro...."

Defense: "Collette Palomo."

Hila'an: "[Victim]"

Defense: "[Victim"]

Hila'an: "Myself."

Defense: "Yourself."

Hila'an: "Francesca De Oro."

Defense: "Francesca De Oro."

Hila'an: "Veronica Dydasco."

Defense: "Veronica Dydasco."

Hila'an: "And Laylynn Eclavea."

Defense: "Laylynn Eclavea. Seven… six people. Now, did you all meet there for a certain occasion or were you there… when you were there was [Victim] already there?"
Hila'an: "Yes."

Min. Entry 1:29:56 - 1:31:00PM (Jun. 28, 2022).

Therefore, the question before the Court is whether the Prosecutor's line of questioning as it relates to the meeting at Collette Palomo's house assumed facts not in evidence such that it so infects the trial with unfairness as to make the possible resulting conviction a denial of due process, and thereby warrants a mistrial. The Court finds that based on the transcript of Hila'an's testimony there was sufficient foundation including the specific location, time of day, and the people present, to support the Prosecutor's line of questioning as to the meeting at Collette Palomo's house. However, the Court's analysis does not end there. Even if such foundation was laid, the Prosecutor took the questioning of Sablan one step too far.

When the People renewed their motion on July 28, 2022, for the Court to reconsider its June 27, 2022, Decision and Order that effectively excluded Sablan from testifying, the Court

found that *"it is a fair request to give an explanation to the jury about who accompanied Victim to the police station."* However, the Court reiterated that the request does *"not change the Court's analysis that [Matthew Sablan] should not be allowed to testify as to any hearsay statement made by the Victim."* As such, the Court granted the People's request, and allowed the People to call Matthew Sablan as a witness for that limited purpose developed during the trial that day. *See* Min. Entry 3:03:30 – 3:04:07PM (Jun. 28, 2022). In other words, the Court permitted Sablan to testify to the limited scope of (1) accompanying Victim to make the report, and (2) Victim's demeanor. Therefore, the People's line of questions related to the meeting at Collette Palomo's house goes beyond what the Court permitted. Therefore, Defendant's argument fails to the extent that the Prosecutor's line of questioning assumed facts not in evidence. However, the People did exceed the permitted use of Sablan as a witness.

The question then becomes whether exceeding the permitted use of Sablan as a witness so infects the trial with unfairness as to make the possible resulting conviction a denial of due process, and thereby warrants a mistrial. The Court finds that it does not for two reasons. First, the Prosecutor's line of questioning as it relates to the meeting at Collette's house lasted for about one minute and two seconds. *See* Min. Entry 9:53:04 – 9:54:06AM (Jun. 29, 2022). Second, the Court struck a portion of the continued questions as it relates to the meeting at Collette Palomo's house from the record, specifically:

> Prosecutor: *"Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?"*
>
> Sablan: "Yes, I was."
>
> Prosecutor: *"Where did this occur?"*
>
> Sablan: "This was at Collette's house."
>
> Prosecutor: "Collette's house?"

Sablan: "Mhm."

Prosecutor: "*Who else was at Collette's Palomo's house?*"

Min. Entry 9:53:45 – 9:54:00AM (Jun.29, 2022). Further, the Court instructed the jury that such line of questioning is stricken, and such testimony is not to enter their deliberations. As such, the jury is left to consider less than one minute, specifically about 47 seconds, of Sablan's testimony related to the meeting at Collette Palomo's house. The Court finds that such remaining 47 seconds of testimony does not rise to the level that so infects the trial with unfairness as to make the possible resulting conviction a denial of due process such that it warrants a mistrial.

### ii. *Prosecutor's unintentional use of the hearsay statement in her question to Sablan does not warrant a mistrial.*

Defendant argues that the Prosecutor's question to Sablan explicitly stated: "*victim revealed to the witness that the Defendant sexually assaulted her,*" is a direct, blatant, and flagrant violation of this Court's Order on Defendant's Motion in Limine (referencing the Court's June 27, 2022, Decision & Order). *See* Def's Mot. in Lim. Mistrial p. 3 (June. 29, 2022). In contrast, the People argue that the question that included the statement "when the victim revealed she was sexually assaulted," is not hearsay because it is not being offered for the truth of the matter asserted, but to question the witness as to whether or not the witness was present during the disclosure. People's Opp'n p. 6 (Jun 30, 2022).

The issue before the Court is whether the form of the question—"*Were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?*"—is hearsay. This Court has previously held in its June 27, 2022, Decision and Order that:

> The Court finds that the witnesses' testimony, to the extent that the testimony relates to or is an iteration of, "Victim told me that she was sexually assaulted by Defendant," and the details of such allegation, is hearsay because it is an out of court statement offered for the truth of the matter asserted—that Defendant [allegedly] sexually assaulted Victim.

...

> [T]he hearsay statement is inevitable and unavoidable. Even if the hearsay statement is not solicited from any of the witnesses on the People's direct examination, it may eventually come out during Defendant's cross examination.

Decision & Order pp. 4 - 5 (Jun. 27, 2022).

As it turns out, both the parties appear to have used an iteration of the exact hearsay statement that this Court excluded in that Decision and Order. The Court notes and distinguishes the question with the hearsay statement as it was used by both parties. Defense asked the question containing the hearsay statement in his cross-examination of Hila'an:

> Defense: "And that is because she came... she approached you and several other people and made her claim ... [inaudible stutter] Excuse me. *She made her allegations in front of all these people about being sexually assaulted, correct?*"
>
> Hila'an: "Correct."

Min. Entry 1:27:45 (Jun. 28, 2022). The nature and effect of Defense using the question containing the hearsay statement in his cross-examination of Hila'an is used to attack and discredit the prosecution's case, which Defendant has a right to do.

The Prosecutor, on the other hand, asked a question containing the hearsay statement in her direct-examination of Sablan:

> Prosecutor: "*Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?*"
>
> Sablan: "Yes, I was."

Min. Entry 9:53:45AM (Jun. 29, 2022). The nature and effect of the Prosecutor using the question is to bolster the prosecution's case. Therefore, the question then becomes whether the Prosecutor's question containing the hearsay statement so infected the trial with unfairness as to make the possible resulting conviction a denial of due process such that it warrants a mistrial.

The Court finds that the Prosecutor's line of questioning does not so infect the trial with unfairness such that it is a denial of due process for several reasons. First, the contended line of questioning lasted for about 15 seconds, 9:53:45 – 9:54:00AM, on the third day of trial. Second, the Court finds that the contended line of questioning was not blatant, flagrant, or intentional. The Court observed that while the Prosecutor's first question—"*Matt, were you there when [Victim] revealed that she was sexually assaulted to your mutual friends?*"—included the hearsay statement, it did not result in a hearsay response. Further, the Court observed that the Prosecutor's questions that followed the initial contended question, moved away from the hearsay statement, and the potential to elicit a hearsay response from Sablan. Third, the Court finds that the contended line of questioning does not so infect the trial with unfairness such that Defendant is denied due process because the Prosecutor's line of questions to Sablan and the answers thereto was stricken from the record. Finally, the jury was informed that such line of questioning was stricken, and they were instructed that such testimony is not to be considered in their deliberations. As such, the Court finds that the Prosecutor's line of questions, that was also already stricken from the record, does not rise to the level to warrant a mistrial.

### iii. The Court admonishes Prosecutor for exceeding the limited scope of Sablan as a witness, and for her unintended use of the hearsay statement in her question.

The Court recognizes that it has addressed the identical argument that "the People's intended use of the witnesses' testimony [including Sablan], [was] to prove that a *disclosure* was made to the witnesses [including Sablan]," in its June 27, 2022, Decision and Order. *See* Decision & Order p. 4 (Jun. 27, 2022). In addressing that argument, the Court held:

> The People may elicit the same testimony, that Victim made such disclosure to the witnesses, from the Victim herself. Therefore, not only is the evidence inadmissible hearsay no matter how it is sliced, but it is also unnecessary because testimony about Victim making such a disclosure can come from the Victim herself.

Decision & Order pp. 4 -5 (Jun. 27, 2022). The Court takes the time to admonish the Prosecutor for not only exceeding the permitted scope of Sablan as a witness, but also for her unintended use of the inevitable and unavoidable hearsay statement in her question asked for the purpose of proving a disclosure was made.

### iv. The Court distinguishes Dakin v. State, 632 S.W.2d 864 (Tx. App. 1982).

Defendant points the Court's attention to persuasive authority, *Dakin v. State*, 632 S.W.2d 864 (1982). In relying on such authority, Defendant argues that the record will reflect numerous attempts by the Government to circumvent the Court's Order on the Defendant's motion in limine [referencing the July 27, 2022, Decision & Order], and to present harmful facts to the jury in the form of questions. Def's Supp. p. 4 (Jun. 30, 2022).

In *Dakin* the court reversed a conviction based on prosecutorial misconduct. The *Dakin* court reasoned that the record, in that case, reflected a course of conduct by the prosecutor which could serve no purpose other than to inflame and prejudice the minds of the jurors. *See Dakin*, 632 S.W.2d. at 868. The *Dakin* court further held that when the entire record is permeated with improper tactics, emotional outbursts, and sidebar remarks, the verdict reached by the jury must necessarily be based upon consideration of such factors. *See Id.* at 868-69.

The Court is not persuaded by this authority. First, unlike the extensive colloquy that included ongoing commentary on the evidence and the weight to be given to it, the colloquy at issue here was limited to about one minute and two seconds, 15 seconds of which was stricken from the record. Further, the colloquy at issue here was not spackled with commentary intended to inflame the minds of the jury. The colloquy here was otherwise typical as the Prosecutor asked a question, and Sablan answered.

**b. A Curative Instruction is Sufficient to Cure any Prejudice to Defendant.**

The final inquiry before the Court is whether a curative instruction is sufficient to cure any prejudice to Defendant such that a mistrial is not necessary. A mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial impact of the error. *Aguon*, 2020 Guam 24 ¶ 22. In *Aguon*, the trial court took care to craft a curative instruction with the input of the parties. *Aguon*, 2020 Guam 24 ¶ 28. The court even played back the trial recording. *Id.*

Here, the parties made their arguments as it relates to Defendant's oral Motion for Mistrial. After the arguments were made, the Court took a brief recess to research the appropriate authority as it relates to Defendant's oral motion for mistrial. Upon returning from the recess, the Court did a playback of the relevant recording. The Court then denied the oral Motion for Mistrial and offered a curative insurrection within the same hour that the Motion was made. The Motion was made at about 9:53:45 AM, and the Court offered a curative instruction at about 10:21:30AM. Further, the Court worked with the parties for about 15 minutes to craft a curative instruction. *See* Min. Entry 10:21:30 - 10:37:00AM (Jun. 29, 2022). The Court then instructed the witness, Sablan, that his testimony should not include any statements that Victim said. *See* Min. Entry 10:37:00 - 10:38:06AM (Jun. 29, 2022). Then the Court brought the jury back in and gave them the curative instruction—that the Prosecutor's last three question to Sablan and Sablan's answers thereto are stricken and shall not be considered in their deliberations. *See* Min. Entry 10:38:10 - 10:38:40AM (Jun. 29, 2022). As such, the Court finds that reasonable steps were taken to cure any prejudice to Defendant.

## CONCLUSION

For the above reasons, the Court hereby **DENIES** Defendant's Motion in Limine for Mistrial.

**IT IS SO ORDERED** JUL 0 6 2022 _____.

**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**